UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAY CHAPMAN and
KIMBERLY CHAPMAN,

                    Plaintiffs,

    v.                                                **DECISION AND ORDER**
                                                        04-CV-84S

VERSPEETEN CARTRAGE, LTD., and
BERNARD RIVARD,

                      Defendants.
_____

      1.      In this action, Plaintiff Jay Chapman alleges that on December 13, 2002, while he was operating a tractor trailer on the Lewiston-Queenston Bridge, he was struck by a truck owned by Defendant Verspeeten Cartrage, Ltd. ("Verspeeten") and operated by Verspeeten's employee, Defendant Bernard Rivard ("Rivard"). Plaintiffs assert claims for negligence and for loss of consortium.[1]

      2.      Plaintiffs commenced this action on January 27, 2004, by filing a Summons and Complaint in the New York State Supreme Court, Niagara County. Defendants removed this action to the United States District Court for the Western District of New York on February 6, 2004. On March 7, 2006, Defendants filed the instant Motion for Summary Judgment.[2] This Court heard oral argument on June 8, 2006, and reserved decision at that time. For the reasons stated below, Defendants' Motion for Summary Judgment is denied.

      3.      The following facts are undisputed for purposes of Defendants' Motion, except where indicated. On the morning of December 13, 2002, Plaintiff was driving a

---

[1] Plaintiff Kimberly Chapman's loss of consortium claim is derivative. Accordingly, any reference to "Plaintiff" in the singular relates to Jay Chapman.

[2] In support of their Motion for Summary Judgment, Defendants filed a Statement of Undisputed Facts, a Memorandum of Law, an Affidavit by Steven M. Zweig, Esq. with numerous exhibits, and a Reply Memorandum of Law. Plaintiffs filed a Declaration by Kevin Graff, Esq. with numerous exhibits, a Statement of Undisputed Facts, and a Memorandum of Law in opposition to Defendants' Motion.

tractor trailer with an aluminum tanker for CRS Trucking ("CRS") on the Lewiston-Queenston Bridge when he was struck by a truck owned by Verspeeten and operated by Rivard. (Pl.'s State., ¶¶ 1-4, 9).[3]  Approximately one hour after the accident, Plaintiff had complaints of pain, so his wife took him to Mount St. Mary's Hospital. (Pl.'s State., ¶ 11). The accident occurred on a Friday, and Plaintiff returned to work the following Monday, December 16, 2002. (Def.'s State., ¶ 3).[4]  Between December 16, 2002, and August 31, 2003, Plaintiff continued to work for CRS and was able to perform all of his duties as a truck driver. (Def.'s State., ¶ 4). Plaintiff left CRS on August 31, 2003, but returned to the company in December of 2005. (Def.'s State., ¶¶ 5-6).

Plaintiff began treating with Dr. Andrew Cappuccino, an orthopedic surgeon, on or about April 1, 2003. (Pl.'s State., ¶ 20). At his initial evaluation, Plaintiff complained of neck and low back pain and exhibited a reduced range of motion with spasms in his cervical spine and reduced bending and rotation in the lumbar spine. (Pl.'s State., ¶ 21). An April 21, 2003 cervical MRI revealed that Plaintiff had a herniated discs at C5-6 and C6-7, and a May 6, 2003 lumbar MRI showed that he had disc injuries at L2-3, L4-5, and L5-S1 with straightening, loss of lordosis and a disc herniation pressing on the outgoing nerve root at L4-5. (Pl.'s State., ¶¶ 22-23). Through June of 2003, Plaintiff continued to complain to Dr. Cappuccino of severe neck and low back pain and to exhibit reduced range of motion in both his cervical and lumbar spines. (Pl.'s State., ¶ 24). On April 20, 2004, Plaintiff was advised that he was a candidate for cervical disc replacement surgery. (Pl.'s State., ¶ 25).

---

[3] "Pl.'s State." refers to Plaintiffs' Statement of Undisputed Facts. (Docket No. 31)

[4] "Def.'s Statement" refers to Defendants' Statement of Undisputed Facts. (Docket No. 26).

On February 16, 2005, Plaintiff advised Dr. Cappuccino that the pain in his lumbar spine had become more severe with pain radiating into his lower extremities. (Pl.'s State., ¶ 26). A second lumbar MRI, conducted on March 22, 2005, showed right paracentral disc protrusion at L5-S1, and a September 29, 2005 discography/CT scan revealed abnormalities at L4-5 and L5-S1. (Pl.'s State., ¶¶ 27-28). On August 2, and August 3, 2005, Plaintiff underwent a Functional Capacity Evaluation including a musculoskeletal exam at Buffalo Ergonomics & Rehabilitation Services. (Def.'s State., ¶¶ 8-9). Registered Occupational Therapist Mary R. Orrange found that Plaintiff had an active range of motion within functional limitations, a good ability for postural activities, low level postural activities and ambulation activities, and good bi-lateral grip/pinch strength, that he had no limiting factors and was able to perform all aspects of medium physical demand level work and up to sixty-five pounds of heavy physical demand work. (Def.'s State., ¶¶ 9-12). On December 1, 2005, Dr. Cappuccino cleared Plaintiff to return to work at CRS for 40 hours a week, eight hours a day, and described his sixty-five pound lifting restriction as "not profound." (Def.'s State., ¶ 13, 18).

At his most recent visit on February 27, 2006, Plaintiff exhibited a marked decrease in his lumbar range of motion in flexion, extension, lateral bending and rotation, as well as pain and loss of range of motion in his cervical spine. (Pl.'s State., ¶ 30). Dr. Cappuccino diagnosed Plaintiff with straightening of the normal lordotic curve of the lumbar spine along with persistent pain and spasm, and requested authorization to perform an anterior retroperitoneal discectomy at L4-5 and L5-S1, and anterior interbody stabilization at L4-5 and L5-S1. (Pl.'s State., ¶¶ 30-31). Based on his findings, Dr. Cappuccino opined that within a reasonable degree of certainty, as a result of the December 13, 2002 motor

vehicle accident, Plaintiff sustained a significant limitation and permanent consequential limitation to his lumbar spine in the form of disc herniation at L4-5, which has caused severe pain and a 25% restriction in lumbar range of motion and which will ultimately require surgical intervention.  (Pl.'s State., ¶ 33).  Moreover, Dr. Cappuccino found that Plaintiff sustained a significant limitation and permanent consequential limitation to his cervical spine in the form of herniated discs at C5-6 and C6-7, which has caused severe pain and a 60% restriction in cervical spine range of motion and which may require surgical intervention.  (Pl.'s State., ¶ 34).

Plaintiff sustained two herniated cervical discs in a car accident in 1990 and was treated for complaints of neck and low back pain in 1999 and 2001.  (Def.'s State., ¶¶ 15-17).  However, prior to December 13, 2002, Plaintiff never treated with an orthopedist, orthopedic surgeon, or neurosurgeon.  (Pl.'s State., ¶ 15).  He contends that prior to December 2002, he never experienced low back pain like he currently experiences, and any back or neck pain he felt prior to that time was temporary and/or went away with physical therapy.  (Pl.'s State., ¶¶ 16-18).

4.  Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law."  Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 1609, 26 L. Ed. 2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

Once a moving party has met its initial burden to demonstrate that no genuine issue as to any material fact exists, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, the nonmovant "must come forward with evidence sufficient to allow a reasonable jury to find in [his or her] favor." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (internal citations omitted). "Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment." Zdziebloski v. Town of Greenbush, 336 F. Supp. 2d 194, 201 (N.D.N.Y. 2004) (citing Carey v. Crecenzi, 923 F.2d 18, 21 (2d Cir. 1991)).

5.      Under New York's no-fault statutory scheme for automobile accidents, there is no right of recovery for basic economic loss caused by negligence. Morrone v. McJunkin, 98 CIV 2163, 1998 WL 872419, at *1-*2 (S.D.N.Y. Dec. 15, 1998); see also Rogers v. McLamb, No. 04 Civ. 7043, 2006 WL 2734228, at *2 (S.D.N.Y. Sept. 22, 2006). There is, however, a right of recovery for non-economic loss when the negligence results

in "serious injury." Id. at *2 (citing N.Y. INS. LAW § 5104(a)).  To proceed with an auto accident claim in New York, a plaintiff must present objective proof that he or she suffered a "serious injury" as that phrase is defined by New York Insurance Law.  See Toure v. Avis Rent A Car Systems, Inc., 98 N.Y.2d 345, 350 (2002); N.Y. INS. LAW § 5102(d).

Section 5102 of the New York Insurance Law defines the term "serious injury" as "a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment." N.Y. INS. LAW § 5102(d). To prove the extent or degree of physical limitation and substantiate a claim of serious injury, a plaintiff may submit an expert opinion which quantifies, in terms of a numeric percentage, plaintiff's loss of range of motion.  Toure, 98 N.Y.2d at 350 (citing Dufel v Green, 84 N.Y.2d 795, 798 (1995)).  "An expert's qualitative assessment of a plaintiff's condition also may suffice, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system."  Id.

In this case, Plaintiff contends that as a result of the December 13, 2002 vehicle accident, he has suffered a "permanent consequential limitation of use of a body organ or member" or a "significant limitation of use of a body function or system," specifically, disc herniations in his cervical and lumbar spines.  Defendant moves for summary judgment

arguing that the evidence demonstrates that Plaintiff's limitations are not severe enough to meet the statutory threshold and that they are the result of a pre-existing degenerative disc condition.

Having reviewed the record, this Court finds that there is a genuine issue of material fact as to whether Plaintiff sustained a qualifying injury under New York Insurance Law as a result of the December 13, 2002 accident. Plaintiff has submitted admissible evidence -- the sworn statement of his treating orthopedic surgeon -- that the accident caused a 25% restriction in Plaintiff's lumbar range of motion as well as a 60% restriction in his cervical range of motion. Contrary to Defendants' contention, Dr. Cappuccino's conclusion regarding Plaintiff's limitations is supported by objective medical evidence including: (1) Plaintiff's cervical and lumbar MRIs from April 21, 2003, May 6, 2003, March 22, 2005, which revealed disc herniations, disc injuries, pressure on the outgoing nerve root at L4-5, and paracentral disc protrusion; (2) his September 29, 2005 discography/CT scan, which showed lumbar abnormalities; (3) a reduced range of motion in Plaintiff's cervical and lumbar spines, which he consistently exhibited during physical examinations by Dr. Cappuccino;[5] and (4) his candidacy for cervical disc replacement surgery.

In support of summary judgment, Defendants have offered some evidence that Plaintiff suffers only minor limitations and that he had a preexisting back condition. For example, the record reflects that in August of 2005, Occupational Therapist Orrange concluded that Plaintiff had an active range of motion within functional limitations, and in December of 2005, Dr. Cappuccino cleared Plaintiff to work 40 hours a week, eight hours a day. Moreover, with respect to Plaintiff's preexisting back problems, it is undisputed that

---

[5]Dr. Cappuccino noted Plaintiff's reduced range of motion in his cervical and lumbar spines as early as April 1, 2003, and as recently as February 27, 2006.

Jay Chapman sustained two herniated cervical discs in a car accident in 1990, and was treated for low back pain in 1999.[6]

Plaintiffs' submissions in opposition to Defendants' Motion, however, raise genuine issues as to whether he sustained a "permanent consequential limitation of use of a body organ or member" or a "significant limitation of use of a body function or system," see, e.g., Pommells v. Perez, 4 N.Y.3d 566, 577 (2005), and whether his prior injuries caused or contributed to his current limitations. Specifically, Plaintiff cites to the fact that he never treated with an orthopedist, orthopedic surgeon, or neurosurgeon prior to December 13, 2002. Moreover, he testified that prior to December of 2002, he never experienced low back pain like he currently experiences and that any back or neck pain he felt prior to that time was temporary and/or went away with physical therapy. On the record before it, this Court finds that a genuine issue of material facts exist as to whether Plaintiff suffered a serious injury as a result of the December 13, 2002 accident. Accordingly, Defendant's Motion for Summary Judgment must be denied.

IT IS HEREBY ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 26) is DENIED.

SO ORDERED.

Dated:   March 10, 2007
         Buffalo, New York

                                              /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge

---

[6] Pursuant to Rule 56.1(c) of the Local Rules of Civil Procedure for the United States District Court for the Western District of New York, "all material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." Plaintiff has not disputed that he suffered disc herniations in 1990.